## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANTONIO FELICIANO, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 17-430-LPS |
| | : | |
| TRUMAN MEARS, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

---

### MEMORANDUM OPINION

Antonio Feliciano.  *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

November 16, 2020
Wilmington, Delaware

---

[1]Warden Truman Mears replaced former Warden Kolawole Akinbayo, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I.    INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Antonio Feliciano ("Petitioner").  (D.I. 1)  The State filed an Answer in Opposition.  (D.I. 9)  For the reasons discussed, the Court will dismiss the Petition.

## II.    BACKGROUND

On April 24, 2014, following a bench trial in the Superior Court, Petitioner was convicted of second degree burglary and theft under $1500 (lesser included offense).  (D.I. 9 at 1)  On November 6, 2014, the Superior Court sentenced Petitioner as a habitual offender to eight years at Level V for the burglary conviction, and six months at Level V suspended for six months of probation for the theft conviction.  (*Id.*)  The Delaware Supreme Court affirmed Petitioner's convictions in June 2015. *See Feliciano v. State*, 115 A.3d 1214 (Table), 2015 WL 3766442 (Del. June 12, 2015).

In September 2015, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 12-9)  The Superior Court conducted a hearing on the Rule 61 motion in February 2016. *See Feliciano v. State*, 157 A.3d 1235 (Table), 2017 WL 897421, at *4 (Del. Mar. 3, 2017).  After the hearing, in April 2016, the Superior Court ordered Petitioner to undergo a psychiatric evaluation to determine Petitioner's competency to stand trial and to assess his state of mind at the time of the offense.  (D.I. 12-7 at 2) The psychiatric report was filed in May 2016, finding that Petitioner, although mentally ill, had been competent to stand trial. *See Feliciano,* 2017 WL 897421, at *9.  The Superior Court denied the Rule 61 motion on June 24, 2016.  *Id.* at *2.  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on March 3, 2017.  *Id.*

III.   **GOVERNING LEGAL PRINCIPLES**

A.   **Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts.  *See Lines v. Larkins*, 208 F.3d 153, 160 (3d

Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have

3

found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280,

4

286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, and unreasonable application standard of § 2254(d)(2) applies to decisions on merits).

## IV.   DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, which asserts the following three grounds for relief: (1) defense counsel provided ineffective assistance by failing to subpoena a witness identified by Petitioner; (2) there was insufficient evidence to support Petitioner's conviction; and (3) Petitioner was not competent at the time of his trial because he was taking medication for his mental illness.  (D.I. 1)

### A.   Claim One: Ineffective Assistance of Counsel

In Claim One, Petitioner contends that defense counsel provided ineffective assistance by failing to subpoena Bruce Cherry to testify at trial.  According to Petitioner, Cherry is one of the two eyewitnesses to the offense for which Petitioner was convicted.  Petitioner presented the arguments in Claim One to the Delaware state courts in his Rule 61 proceeding.  The Superior Court denied the Claim as meritless, and the Delaware Supreme Court affirmed that decision "on the basis of the [Superior C]ourt's order." *Feliciano*, 2017 WL 897421, at *1.  Given these circumstances, Claim One will only warrant relief if the Superior Court's decision[2] was either contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with

---

[2]Given the Delaware Supreme Court's reliance on the Superior Court's judgment, the Court will reference the Superior Court's decision for all claims analyzed under § 2254(d)(1) in this Opinion.

reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*  A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Here, the Superior Court decision was not contrary to *Strickland*; it correctly identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

6

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[3] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but-for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

As defense counsel explained in his Rule 61 affidavit, the only available witness – Petitioner's son – actually did testify at trial. Bruce Cherry, the other eyewitness, "was incarcerated at the time of trial and unavailable according to his attorney." (D.I. 12-6 at 40) During the Rule 61 hearing, defense counsel further explained that Cherry's attorney asserted Cherry's Fifth Amendment right against self-incrimination and refused to allow Cherry to testify at trial. *See Feliciano*, 2017 WL

---

[3]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under
> § 2254(d).

562 U.S. at 105 (internal citations omitted).

897421, at *8.  Given this record, the Court concludes that defense counsel did not perform deficiently by failing to subpoena an unavailable witness.

It follows that Petitioner has failed to demonstrate that he suffered prejudice from Cherry's absence as a witness. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991) (petitioner cannot establish ineffective assistance of counsel for failure to call a witness in absence of specific allegation or offer of evidence that testimony was forthcoming or available upon reasonable investigation); *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir.1990 ) (prejudice prong of *Strickland* not satisfied where petitioner did not establish that testimony of potential witness – whom counsel failed to interview – would have supported his claim of self-defense).  Notably, Petitioner has provided no evidence that Cherry would have testified at trial, that Cherry would have admitted to burglarizing the home, or that Cherry would have absolved Petitioner of participating in the burglary.

For all of these reasons, the Court concludes that the Superior Court reasonably applied *Strickland* in holding that defense counsel did not provide ineffective assistance by failing to subpoena Cherry to testify at trial.

**B.      Claim Two: Insufficient Evidence**

In Claim Two, Petitioner contends that insufficient evidence was presented at trial to support his conviction because the victim homeowner ("victim") had given him permission to be in her house.  He asserts that he was only at the house to find money that the victim had taken from him the night before.

The record reveals that Petitioner did not exhaust state remedies for Claim Two, because he did not present a stand-alone insufficient evidence claim to the Superior Court in his Rule 61 motion and to the Delaware Supreme Court on post-conviction appeal.  Instead, he argued that defense

counsel was ineffective for failing to challenge the evidence and for having Petitioner forego a suppression hearing. (D.I. 12-9 at 4; D.I 12-4 at 4-9)

At this juncture, any attempt by Petitioner obtain review of Claim Two in a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(1)(i) and barred as second or successive under Rile 61(i)(2). Therefore, Claim Two is procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert any cause for his procedural default of Claim Two. In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate that he was prejudiced by the default. Although Petitioner asserts he did not "break into" the house because he had the victim's permission to be there, a person is guilty of second degree burglary when the person knowingly enters *or remains unlawfully* in a dwelling with the intent to commit a crime therein. *See* 11 Del. Code § 825(a). In Petitioner's case, the trial court was aware that the victim had previously entrusted Petitioner with holding her mail and with keeping an eye on her house. However, the fact that Petitioner may have had permission to enter the victim's home does not change the fact that Petitioner was found in possession of the items that were stolen from the victim's home. Thus, under Delaware law, there was sufficient evidence for a trier of fact to find that Petitioner was guilty of second degree burglary.

Finally, the miscarriage of justice exception cannot excuse Petitioner's default, because he does not assert any new reliable evidence of his actual innocence.

Thus, for all of these reasons, the Court will deny Claim Two as procedurally barred.

C.    **Claim Three: Competency to Stand Trial**

In Claim Three, Petitioner contends that he was not competent to stand trial because he was

taking medications that affected his mental state. The Superior Court rejected the argument as

meritless in Petitioner's Rule 61 proceeding, and the Delaware Supreme Court affirmed that decision

on the basis of the Superior Court's order. As a result, Claim Three will only warrant habeas relief if

the Superior Court's decision was either contrary to, or an unreasonable application of, clearly

established federal law.

The clearly established federal law governing competency issues is the standard announced

in *Dusky v. United States*, 362 U.S. 402 (1960), and *Drope v. Missouri*, 420 U.S. 162 (1974). As

explained by the Supreme Court:

> the Constitution does not permit trial of an individual who lacks
> "mental competency." *Dusky* defines the competency standard as
> including both (1) "whether" the defendant has "a rational as well as
> factual understanding of the proceedings against him" and (2)
> whether the defendant "has sufficient present ability to consult with
> his lawyer with a reasonable degree of rational understanding." 362
> U.S., at 402. *Drope* repeats that standard, stating that it "has long
> been accepted that a person whose mental condition is such that he
> lacks the capacity to understand the nature and object of the
> proceedings against him, to consult with counsel, and to assist in
> preparing his defense may not be subjected to a trial." 420 U.S., at
> 171.

*Indiana v. Edwards*, 554 U.S. 164, 169-70 (2008).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior

Court stated that the standard for competency was "whether [the defendant] has sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding – and whether

he has a rational as well as factual understanding of the proceedings against him, and whether he

possess[es] the ability to 'assist in preparing his defense.'" *Feliciano*, 2017 WL 897421, at *13. While

the Superior Court did not specifically mention *Dusky* and *Drope*, the Delaware case it referenced[4] did articulate the applicable standard and cite to *Dusky* and *Drope*. Consequently, the Superior Court's decision was not contrary to clearly established federal law. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (concluding state court's decision was not "contrary to" clearly established federal law where it relied on state court cases which themselves articulated proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must further determine if the Superior Court unreasonably applied the standard articulated in *Drope* and *Dusky* in rejecting Petitioner's argument that he was not competent to stand trial because he was medicated. Significantly, when a state court renders a determination as to competency, its

> determinations on the merits of a factual issue are entitled to a presumption of correctness on federal habeas review. A federal court may not overturn such determinations unless it concludes that they are not "fairly supported by the record." We have held that a state court's conclusion regarding a defendant's competency is entitled to such a presumption.

*Demosthenes v. Baal,* 495 U.S. 731, 735 (1990) (internal citations omitted).

After reviewing the record in accordance with this framework, the Court concludes that the Superior Court's competency determination is reasonably supported by the record and, in turn, that the Superior Court reasonably applied clearly established federal law in denying Petitioner's contention that he had not been competent to stand trial due to being medicated for his mental illness. Although Petitioner contends that his medicated-state rendered him incompetent to stand

---

[4]The Superior Court cited *State v. Williamson,* 2013 WL 268981, at *2 (Del. Super. Ct. Jan. 23, 2013), which itself cited *Dusky,* 362 U.S. at 402, and *Drope,* 420 U.S. at 171. *See Feliciano,* 2017 WL 897421, at *13.

trial, there is no support for this claim.  The transcript of the pre-trial colloquy and the exchanges

between Petitioner and the trial judge reveal that Petitioner was able to respond clearly and properly

to the judge's questions and that Petitioner was aware of the proceedings against him.  During the

pre-trial colloquy, defense counsel informed the trial judge that he had known Petitioner for twenty-

five years, and provided valuable insight and support for the finding that Petitioner was competent

to stand trial.  The trial judge also independently questioned Petitioner about his familiarity with the

criminal justice system, the medications he was taking and their effect on his ability to understand

the proceedings against him, his understanding of the charges against him and possible sentences,

his desire to proceed with a bench trial instead of a jury trial, and confirmed that the final decision

on how to proceed was Petitioner's alone.  (D.I. 12-10 at 17-19)

> After all of this interaction, the trial judge then concluded:

>> I find that based on what [defense counsel] has told me, your
>> attorney, and my conversation with you, [Petitioner], I find that you
>> are aware of what is going on today, you understand the process, you
>> understand what you're facing.  You are able to communicate with
>> your attorney and that you feel that you are prepared for trial and that
>> we can go forward.

(D.I. 12-10 at 19)

> The Superior Court's inquiry into Petitioner's competency during the Rule 61 proceeding

provides additional support for the determination that Petitioner was competent to stand trial.  The

judge who conducted the pre-trial competency colloquy with Petitioner was the same judge who

conducted the Rule 61 hearing on Petitioner's competency argument, so that judge had the benefit

of assessing Petitioner's credibility and awareness in both proceedings.  However, the Superior

Court did not just rely on its past understanding of Petitioner's case.  Rather, after initially reviewing

Petitioner's Rule 61 allegations, defense counsel's Rule 61 affidavit in response, and the State's

response, the Superior Court found it necessary to conduct a hearing on Petitioner's contentions.

The Superior Court described Petitioner's demeanor and presentation during the Rule 61 hearing as follows:

> [Petitioner] represented himself, appeared coherent, responsively answered questions, and acted appropriately. [Petitioner] was aware that he was on medications, was able to tell the Court the names of his current medications (Geodon and Zoloft), and knew that he took Risperdal, Haldol, and Seroquel for twelve years prior to his trial.
>
> He acknowledged that his medications actually helped his mental illness because his prescribed drugs lower the voices in his head, make him feel calmer, and make him feel better about himself. He also admitted that his mental health issues were essentially the same before and after his trial. He said that he was not sure what was happening in the trial because he has memory problems.
>
> Moreover, although [Petitioner] claimed that his medication interfered with his ability to understand the trial, [Petitioner] acknowledged that he did not inform the Court, when he had the opportunity, that he did not understand the proceedings or was unprepared to go forward on the day of trial.

*Feliciano*, 2017 WL 897421, at *4.

Defense counsel testified during the Rule 61 hearing. In addition to reminding the Superior Court about his twenty-five year relationship with Petitioner and his knowledge of Petitioner's mental health issues, defense counsel stated that Petitioner had assisted in his defense and had participated in his trial, explaining that it was Petitioner who suggested defense counsel should subpoena Cherry and his niece to testify at trial. *Feliciano*, 2017 WL 897421, at *8.

The Superior Court also questioned Petitioner about the difference between his Rule 61 allegation of incompetency and the answers he had given during the pre-trial colloquy. *See Feliciano*, 2017 WL 897421, at *4. Petitioner acknowledged he remembered the trial judge's pre-trial questions and, in response to the Superior Court's statement that "you told me you understood what was going on," Petitioner responded:

13

> Well, I was just basically trying to, you know – I don't know what I
> was thinking about but I really wasn't feeling good that day.

*Feliciano*, 2017 WL 897421, at *4.  Petitioner then proceeded to describe his recollection of the

burglary, and stated that he was taking responsibility for the crime even though his son "was one of

the brains behind" the burglary.  *Id.*  After that statement, the following discourse occurred:

| Superior Court: | Which is contrary to what he testified to in [trial] Court, right? |
|---|---|
| Petitioner: | Yeah. |
| Superior  Court: | So, he lied in [trial] Court? |
| Petitioner: | Yeah. |

*Feliciano*, 2017 WL 897421, at *4.

After the conclusion of the Rule 61 hearing, the Superior Court ordered Petitioner to

undergo a competency examination.  The psychiatrist issued a report on May 20, 2016, which stated

that Petitioner had been competent to stand trial, even considering his mental illness.  *Id.* at *10.

Specifically, the report stated that Petitioner "possessed an intact understanding of the legal charges

against him . . . the plea available to him, the plea bargaining . . ., the weight of the evidence against

him and the potential outcome of the case."  *Id.* at *11.

Given this record, Petitioner cannot demonstrate that the Superior Court erred in

determining he was competent to stand trial.  There is strong evidence that Petitioner had a rational

and factual understanding of the proceeding against him, that he was sufficiently able to consult with

defense counsel, and that he assisted in the preparation of his defense.  Accordingly, the Court

concludes that the Superior Court reasonably applied *Drope* and *Dusky* in rejecting Petitioner's

contention that he was incompetent to stand trial, and that its rejection of Claim Three was not

14

based on an unreasonable determination of the facts in light of the evidence. Accordingly, the Court will deny Claim Three for failing to satisfy the standards set forth in § 2254(d)(1) and (2).

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.

15